UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAYNE L.,

              Plaintiff,

     v.                                **DECISION AND ORDER**

                                               23-CV-217S

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

_____

      1.      Plaintiff Layne L.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed his application with the Social Security Administration on August 23, 2016.  Plaintiff's alleged severe disability beginning on January 1, 2000.  His application was denied and he thereafter requested a hearing before an administrative law judge ("ALJ").

      3.      On December 13, 2018, ALJ Susan Smith held a hearing at which Plaintiff represented by counsel and a Vocational Expert appeared and testified.  (R.[2] at 15, 30-63.)  At the time of the hearing, Plaintiff was a 54-year-old man with a high school

---

    [1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.  This includes recasting captions from earlier decisions involving this Plaintiff.

    [2] Citations to the underlying administrative record are designated as "R."

education and past relevant experience as a security guard and stamping press operator. (R. at 23, 872, 864.)

4.      The ALJ considered the case *de novo* and, on March 20, 2019, issued a written decision denying Plaintiff's application for benefits.  (R. at 15, 911.)  After the Appeals Council denied Plaintiff's request to review the ALJ's decision (R. at 1, 926), he filed his first action challenging the Commissioner's decision.  This action resulted in a Decision and Order issued by Hon. Jeremiah J. McCarthy on August 23, 2021, that remanded the case for further proceedings.  Layne L. v. Comm'r, No. 1:20-CV-00493 (JJM) (W.D.N.Y. Aug. 23, 2021) (R. at 932).

5.      Magistrate Judge McCarthy remanded this case to consider Plaintiff's moderate limitations in handling stress (R. at 938-41), finding that "without further explanation from ALJ Smith, it is difficult to see how, as a lay person, she determined that plaintiff's demeanor at a single examination undermined Dr. [Gregory] Fabiano's opinion that plaintiff had a moderate limitation in his ability to deal with stress" (R. at 940). Furthermore, Magistrate Judge McCarthy found that the medical record, including Plaintiff's January 2013 hospitalization following a suicide attempt, supported the opinion of Gregory Fabiano, Ph.D., that Plaintiff had a moderate difficulty in dealing with stress. (R. at 940-41.)

6.      On January 12, 2022, the Appeals Council vacated the ALJ's 2019 decision and  directed  further  administrative  proceedings  consistent  with  Magistrate Judge McCarthy's Decision and Order.  (R. at 948.)

7.      On remand, Plaintiff alleged disability due to right hand and bilateral foot arthritis;  right  shoulder  full  thickness  rotator  cuff  tear  status  post  arthroscopy  with

subacromial decompression, distal clavicle excision, and rotator cuff repair; cervical disc disease; depressive disorder; and anxiety disorder.  (R. at 864.)  ALJ Bryce Baird conducted a video hearing on July 27, 2022, where Plaintiff was represented by counsel and Vocational Expert Marne South appeared and testified.  (R. at 862, 888-907.)  On December 2, 2022, the ALJ issued his decision denying Plaintiff's claim for benefits.  (R. at 862.)  Plaintiff then filed this pending action challenging the Commissioner's final decision.[3]  (Docket No. 1.)

8.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 10, 11.)  Plaintiff filed his Reply on July 26, 2023 (Docket No. 12), stating that no formal reply was needed (id. at 1).  This Court then took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion will be denied and Defendant's Motion will be granted.

9.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971).  Where evidence is

---

[3] The ALJ's December 2, 2022, decision became the Commissioner's final decision on this matter by operation of 42 U.S.C. §§ 405(g), 1383(c)(3).

deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

10.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

11.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § 404.1520.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

12.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based

4

> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations. If the claimant
> has such an impairment, the [Commissioner] will consider
> [her] disabled without considering vocational factors such as
> age, education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, [s]he has the residual functional capacity to
> perform [her] past work. Finally, if the claimant is unable to
> perform [her] past work, the [Commissioner] then determines
> whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

13.     Although the claimant has the burden of proof at the first four steps, the

burden shifts to the Commissioner at the fifth and final step. See Yuckert, supra, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided

into two parts. First, the Commissioner must assess the claimant's job qualifications by

considering his physical ability, age, education, and work experience. Second, the

Commissioner must determine whether jobs exist in the national economy that a person

having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A);

20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct.

1952, 76 L. Ed. 2d 66 (1983).

14.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth

above. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful

activity from the onset date of December 31, 2012, through date last insured of

December 31, 2017. (R. at 864, 17.) At Step Two, the ALJ found that Plaintiff had the

following severe impairments: right hand and bilateral foot arthritis; right shoulder full

thickness rotator cuff tear status post arthroscopy with subacromial decompression, distal clavicle excision, and rotator cuff repair; obesity; cervical disc disease; depressive disorder; and anxiety disorder.  (R. at 864.)  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 865.)

15.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except with limitations.  The ALJ determined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently.  The ALJ noted that Plaintiff could sit for 6 hours in an 8-hour workday and stand or walk 6 hours in a workday. Further, the ALJ noted that Plaintiff could frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, and crouch; but occasionally crawl and reach overhead with the right arm.  The ALJ found that Plaintiff must avoid exposure to hazards including dangerous moving machinery or unprotected heights.  Next, the ALJ observed that Plaintiff was limited to performing simple, routine tasks that can be learned after a short demonstration or within 30 days.  Further, the ALJ found that Plaintiff was limited to work that did not require more than simple work-related decision making and he would not be required to independently develop work strategies or identify workplace needs.  The ALJ also found Plaintiff was limited to occasional interaction with the public and coworkers.  Finally, the ALJ determined that Plaintiff could perform work that required repeating the same tasks every day with little variation in location, hours, or tasks, and work that would be subject to no more than occasional supervision.  (R. at 867-68.)

16.     At Step Four, the ALJ found Plaintiff could not perform his past relevant work as a security guard or a stamping press operator.  (R. at 872.)  At Step Five, the ALJ posed hypotheticals to the Vocational Expert of a claimant similar in age, education, work experience, skills, and RFC to Plaintiff and the Expert opined that this claimant could work as a marker, garment sorter, and router.  (R. at 873.)

17.     Accordingly, the ALJ found that Plaintiff was not disabled.  (R. at 874.)

18.     Plaintiff now argues the ALJ improperly evaluated the level of stress he could endure with full-time work, failing to follow the remand directives of this Court.  He urges remand of this matter to have the ALJ contact Dr. Fabiano to clarify the doctor's definitions of stress and moderate limitation as he opined.

19.     For the reasons that follow, this Court disagrees, finding that the ALJ appropriately evaluated Plaintiff's stress level and his ability to work thereunder.

20.     Given the highly individualized nature of stress, courts have required the ALJ to consider the nature of a claimant's stress, what triggers it, and how those factors affect the claimant's ability to work even in a low stress environment.  Stadler v. Barnhart, 464 F. Supp. 2d 183, 188-89 (W.D.N.Y. 2006); Purpura v. Comm'r, No. 19-cv-01717, 2020 WL 6128038, at *2 (W.D.N.Y. Oct. 19, 2020); SSR 85-15, 1985 WL 56857, at *6 (1985).

21.     Social Security Administration regulations define a moderate mental functioning as the ability to function "in this area independently, appropriately, effectively, and on a sustained basis is fair."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F2c. Moderate limitation, however, does not preclude work.  David F. v. Comm'r, No. 1:20-CV-773-DB, 2021 WL 2666169, at *10 (W.D.N.Y. June 29, 2021).

22.    Plaintiff presents the findings of consultative examiner Dr. Fabiano who noted Plaintiff's reports of having difficulty sleeping, dysphoric moods, hopelessness, loss of usual interests, fatigue, loss of energy, diminished sense of pleasure, and social withdrawal.  (R. at 242-43, 254.)  Plaintiff further reported being always on edge, which Dr. Fabiano considered symptoms of anxiety or panic while stating that he quit drinking alcohol in 2014 but relapsed in September 2015.  (R. at 243.)

23.    Dr. Fabiano examined Plaintiff and found that his appearance was normal, he had adequate social skills, his thought process was coherent and goal directed, his mood was euthymic, and his affect was of full range and appropriate in speech and thought content.  (R. at 243-44.)  He then opined that Plaintiff had moderate limitations in his ability to relate adequately with others and appropriately deal with stress due to adjustment difficulties.  (R. at 245, 866, 867, 871.)  The doctor diagnosed Plaintiff with chronic adjustment disorder with depression and anxiety and alcohol substance use disorder in sustained full remission.  (R. at 245.)

24.    During the remand hearing, the ALJ first observed that Dr. Fabiano made "no specific finding of the stress."  (R. at 888.)  While noting Plaintiff's 2013 suicide attempt and the stressors leading thereto (including his job and housing losses) as evidence that Plaintiff had moderate difficulty dealing with stress, the ALJ asked Plaintiff's counsel whether his client's medical providers also found that Plaintiff had difficulties dealing with stress.  (R. at 886-88.)  Plaintiff's counsel answered that he could not see anything in the treatment record that identified Plaintiff's specific stress triggers.  (R. at 888.)

25.    The ALJ then asked whether there was any mental health provider that opined as to Plaintiff's mental health functioning.  Plaintiff's counsel cited an examination

report from Summit Family Healthcare on October 3, 2016, but conceded that the medical staff there did not render an opinion but reported Plaintiff's subjective complaints.  (R. at 289, 888-89.)  Furthermore, counsel conceded that this was not an examination by a doctor identifying stressors, but Plaintiff's reports about no longer drinking alcohol, his sleep difficulties, and suicidal thoughts.  (R. at 889.)  Plaintiff's counsel noted that "there's not a sort of objective review of those symptoms."  (Id.)  Plaintiff's counsel also answered that Plaintiff's treatment providers did not couch their observations in terms of stress.  (Id.)  Plaintiff's counsel, however, did not identify sources of Plaintiff's stress.

26.     In discussing sources of his stress, Plaintiff then testified about his anxiety and panic attacks, stating that he felt nervous, jerky, and distressed when in stressful situations like the hearing.  Plaintiff also claimed having panic attacks when engaging in his prior security work or when he had to exert himself physically at work.  (R. at 895-96, 868.)  He testified that physical pain and anticipated painful movement also caused his anxiety.  (R. at 896.)

27.     After the hearing and in partial reliance upon Dr. Fabiano's opinion, the ALJ found at Step Two that Plaintiff had "no more than a moderate limitation" in interacting with others and in concentrating, persisting, or maintaining pace.  (R. at 866-67.)

28.     At Step Three, however, the ALJ gave Dr. Fabiano's opinion limited weight because it was from a single examination.  The ALJ faulted the doctor for not defining what he deemed was stress or what constituted a moderate limitation.  The ALJ also found any stress-related limitations were equivocal.  (R. at 871, 872.) The ALJ considered Plaintiff's testimony regarding stress and Dr. Fabiano's assessment in formulating the RFC.  (R. at 871.)  The ALJ nevertheless limited Plaintiff to simple, routine tasks that had

little variation in time, place, and duties, requiring simple work-related decisions, and limiting him to occasional interaction with coworkers and the public "in an attempt to reduce the stress of the employment."  (R. at 868, 872.)

29.    The ALJ concluded that "the record as a whole does not establish difficulty dealing with stress as a disabling condition.  Specifically, the record reflects that despite these difficulties and the claimant's allegations that he cannot work, the claimant is capable of performing tasks consistent with the residual functional capacity."  (R. at 872.)

30.    In addition to Dr. Fabiano's opinion, Plaintiff relies on his 2013 suicide attempt, his testimony about feeling stressed at work when he approached incurring pain upon movement, and his self-reported psychological history to support his argument that his ability to handle stress precluded employment.  (R. at 888-89, 895-96.)

31.    This Court finds, however, that there is no objective diagnosis of Plaintiff having any difficulty addressing stress from Plaintiff's counsel's concession.  (R. at 888-89.)  The only medical opinion identifying any stress limitation is the suggestion in Dr. Fabiano's opinion wherein he concluded that Plaintiff only appeared to have moderate limitation in dealing with stress.  (R. at 245.)  That opinion does not present any identifiable stressors for the diagnosed adjustment disorder.  (R. at 242-45.)

32.    From the psychological record presented here, this Court holds that Plaintiff has not shown that his moderate stress limitation impaired his ability to work. Nevertheless, if as opined by Dr. Fabiano and acknowledged by the ALJ (R. at 245, 870, 871), Plaintiff had moderate limitations in handling stress, he has not shown how that limitation restricts his ability to work.  The record supporting stress limitation on Plaintiff's

employment only contains his hearing testimony of his trepidation before performing movements that might cause physical pain.  (See R. at 896.)

33.     Next, Plaintiff argues that the ALJ failed to meet its obligation to inquire and analyze his ability to deal with stress.  This Court finds that the ALJ did this, inquiring in his colloquy with Plaintiff's counsel on remand.  The ALJ inquired into the nature and triggers for Plaintiff's stress and its impact on his ability to work.  (R. at 871, 886-89.)  The ALJ then applied these findings in assessing Dr. Fabiano's opinion, noting Plaintiff's failure to identify his stress triggers.  (R. at 871.)  Nevertheless, the ALJ incorporated Plaintiff's testimony and Dr. Fabiano's opinion in finding Plaintiff's moderate limitation in addressing stress in the RFC while limiting Plaintiff to performing simple work.  (R. at 868, 871.)  See Cowley v. Berryhill, 312 F. Supp. 3d 381, 384 (W.D.N.Y. 2018) (holding that ALJ adequately accounted for that claimant's moderate stress limitation by limiting her to simple, unskilled work); Newell v. Colvin, No. 15-CV-6262P, 2016 WL 4524809, at *9 (W.D.N.Y Aug. 30, 2016) (claimant limited to low-stress work with no more than occasional interaction with others can perform jobs).

34.     The failure to include a more explicit stress limitation here is harmless because the occupations identified by the Vocational Expert (a marker, garment sorter, or router) are unskilled and suitable for low stress work, see Cowley, supra, 312 F. Supp. 2d at 384.  Thus, a stress limitation is unnecessary here.

35.     Finally, this Court holds that remand of this case for Dr. Fabiano for his definition of stress or moderate limitation due to stress is not warranted because there was no evidence of any workplace limitation upon Plaintiff due to his claimed stress. Plaintiff's circumstances and his medical record can be evaluated under the regulatory

definitions of stress and moderate limitations without requiring recourse to the doctor for his definitions.

36.     Accordingly, having reviewed the ALJ's decision and considered Plaintiff's arguments, this Court finds no error in the ALJ's determination.  The ALJ appropriately considered Dr. Fabiano's opinion, correctly concluding that there was no substantial evidence of employment restrictions arising from Plaintiff's inability to handle stress. Thus, Plaintiff's Motion for Judgment on the Pleadings is denied while Defendant's motion is granted.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        May 28, 2024
              Buffalo, New York


                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                    United States District Judge